UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

**Federal Trade Commission**, and

**State of Ohio ex rel. Attorney General
Dave Yost**,

              Plaintiffs,

v.

**Madera Merchant Services, LLC**, dba E
Check Processing and
Echeckprocessing.net, a Texas company,

**B&P Enterprises, LLC**, a Texas
company,

**Bruce C. Woods**, individually and as an
owner, officer, member, and/or manager
of Madera Merchant Services, LLC and
B&PEnterprises, LLC,

**Patricia Woods**, individually and as an
owner, manager, and/or member of
Madera Merchant Services, LLC and
B&PEnterprises, LLC,

and

**Victor Rodriguez**, individually and as an
owner, officer, member, and/or manager
of Madera Merchant Services, LLC and
B&PEnterprises, LLC

              Defendant's

Cause No. _____

## <u>NOTICE OF RECEIVERSHIP</u>
### <u>Receiver's Notice of Filing Pursuant to 28 U.S.C. § 754</u>

Please take notice that, pursuant to 28 U.S.C. §754 and in accordance with the directions

and powers granted under the, *Ex Parte Temporary Restraining Order with Asset Freeze,*

*Appointment of a Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should not Issue*, filed Under Seal, in the Western District of Texas, Cause No. EP19CV0195 on or about July 19, 2019, a true and correct copy of which is attached as Exhibit "B" and incorporated herein, as the Court-Appointed Temporary Receiver of the Receivership Entities with full powers of an equity receiver, in the cause of which a true and correct copy of the *Complaint for Permanent Injunction and Other Equitable Relief*, is attached as Exhibit "A" and incorporated herein.

Such included documents are to be filed in the United States District Court District of New Mexico, the United States District Court Central District of California Eastern Division and the United States District Court Western District of Wisconsin, in which Districts property is located.

DATED:        July 29, 2019

Respectfully submitted,

**FORBES & FORBES**
711 Myrtle Ave.
El Paso, Texas 79901
(915) 533-5441 Telephone
(915) 533-7441 Facsimile

By:     */s/ Susan M. Forbes_____*
**SUSAN M. FORBES**
Texas State Bar No. 00790704
California State Bar No. 141851
smforbes@forbeslawoffice.com
*Court-Appointed Receiver*

# Exhibit "A"

*12:50 pm*
*1:40 pm*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| **Federal Trade Commission,** and<br><br>**State of Ohio ex rel. Attorney General Dave Yost,**<br><br>    Plaintiffs,<br><br>v.<br><br>**Madera Merchant Services, LLC,** also dba E Check Processing and echeckprocessing.net, a Texas company,<br><br>**B&P Enterprises, LLC,** a Texas company,<br><br>**Bruce C. Woods,** individually and as an owner, officer, member, and/or manager of Madera Merchant Services, LLC, and B&P Enterprises, LLC,<br><br>**Patricia Woods,** individually and as an owner, manager, and/or member of Madera Merchant Services, LLC, and B&P Enterprises, LLC,<br><br>and<br><br>**Victor Rodriguez,** individually and as an officer, member, and/or manager of Madera Merchant Services, LLC, and B&P Enterprises, LLC,<br><br>    Defendants. | No. ___:19-CV-_____<br><br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**<br><br>(FILED UNDER SEAL) |

Plaintiffs, the Federal Trade Commission ("FTC") and the State of Ohio, for their Complaint allege:

1.      The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to obtain temporary, preliminary, and permanent injunctive relief, rescission

1    or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-

2    gotten monies, the appointment of a receiver, an asset freeze, and other equitable relief

3    for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. §

4    45(a), and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310.

5          2.     The State of Ohio, by and through its Attorney General, Dave Yost, brings

6
7    this action pursuant to the Telemarketing Act, 15 U.S.C. § 6103, and the Ohio Consumer

8    Sales Practices Act ("CSPA"), O.R.C. 1345.07 in order to obtain, temporary, preliminary,

9    and permanent injunctive relief, consumer damages, and other equitable relief for

10   Defendants' acts or practices in violation of the Ohio CSPA, O.R.C. 1345.01 *et seq.*, and

11   the TSR, 16 C.F.R. Part 310.

12
13   **JURISDICTION AND VENUE**

14         3.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331,

15   1337(a), 1345, and 1367.

16         4.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), (b)(3), and

17   (c), and 15 U.S.C. § 53(b).

18
19   **SUMMARY OF THE CASE**

20         5.     For more than a decade, Defendants have been running a third party

21   payment processing scheme that uses remotely created payment orders or remotely

22   created checks ("RCPOs") to withdraw money from consumers' accounts on behalf of

23   third-party merchants. An RCPO is a payment instruction or order drawn on a person's

24   account that is created by the payee or the payee's agent and deposited into or cleared

25   through the check clearing system. RCPOs do not bear the signature of the payor. A

26   remotely created check is a type of RCPO.

27
28

6.      Defendants routinely withdraw funds from consumers for perpetrators of fraud and deceptive schemes, including various telemarketing schemes.

7.      Concurrently with the filing of this action, the FTC is filing, in this district, a suit against one of Defendants' largest merchant-clients – a credit card interest-reduction telemarketing scheme known as Educare Center Services ("Educare") based out of Canada and the Dominican Republic.  Defendants have withdrawn at least $11.5 million from American consumers on behalf of Educare.

8.      To execute their payment processing scheme, Defendants open business checking accounts under various assumed names with banks and credit unions, the majority of which are local institutions.  Defendants often misrepresent to the financial institution the type of business for which they open the account, and routinely fail to disclose the real reason for which they open the account – processing consumer payments for third-party merchants via RCPOs.

9.      Red flags about Defendants' practices have led at least 15 financial institutions to close accounts opened by Defendants.  When that happens, Defendants typically open new accounts with different financial institutions.

10.     The Ohio Attorney General previously sued principal defendant Bruce Woods and the corporate predecessors of defendants Madera Merchant Services and B&P Enterprises for unlawfully processing RCPOs on behalf of a Canadian telemarketing scheme, and secured a judgment and injunction against them.  That state action, however, has failed to deter Defendants, who have continued their scheme, violating the FTC Act, the TSR, and Ohio's CSPA, and causing consumers to lose more than $18 million since January 2016.

## PLAINTIFFS

11.     The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

12.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b), 57b.

13.     Plaintiff State of Ohio is one of the fifty sovereign states of the United States, and by and through its Attorney General, Dave Yost, enforces the Ohio CSPA, O.R.C. 1345.01 *et seq.*, which prohibits unfair, deceptive or unconscionable acts or practices in consumer transactions.  The Ohio Attorney General is authorized to initiate actions to enjoin violations of the CSPA and to obtain appropriate relief including appointment of a referee or receiver, for sequestration of assets, to reimburse consumers found to have been damaged, to carry out a transaction in accordance with a consumer's reasonable expectations, to strike or limit the application of unconscionable clauses of contracts so as to avoid an unconscionable result, or to grant other appropriate relief. O.R.C. 1345.07.  Pursuant to the authority found in the Telemarketing Act at 15 U.S.C. § 6103(a), Plaintiff State of Ohio is also authorized to initiate federal district court proceedings to enjoin telemarketing activities that violate the TSR, and in each such case, to obtain damages, restitution, and other compensation on behalf of Ohio residents.  This

Court has supplemental jurisdiction over Plaintiff State of Ohio's state law claims under 28 U.S.C. § 1367.

## DEFENDANTS

### The Corporate Defendants

14.     **Madera Merchant Services, LLC, also d/b/a E Check Processing and echeckprocessing.net ("Madera")** is a Texas limited liability company with its principal places of business at 12282 Eagle Heart Dr., El Paso, TX and 479A Tracey Lane, Hudson, Wisconsin.  Bruce Woods is an owner, president, and manager of Madera.  Patricia Woods is an owner and manager of Madera, and Victor Rodriguez is an officer and manager of the company.

15.     Madera has registered dozens of assumed names, trademarks, or tradenames in Texas and Wisconsin, including certificates and forms stating that Madera operates under the names Educare, Revit Educ Srvc, L.L. Vision, Care Value Services, E Check Processing, Aiding Education, IDR Education, AFB Center, Savings Galore, VOIP Consumer Services, MC Helper, NorthwestPharmacy.com, and Diversified Marketing Group.

16.     Defendants have used the Madera assumed names, trademark and tradenames to open scores of business checking accounts at numerous banks and credit unions in Texas and Wisconsin, including Citizens State Bank, Pioneer Bank, SSB, Classic Bank, N.A., and Security Service Federal Credit Union.  Defendants used these accounts to process consumer payments for third-party merchant-clients via RCPOs. Madera transacts or has transacted business in this district and throughout the United States.

17.     **B&P Enterprises, LLC ("B&P")** is a Texas limited liability company with its principal places of business at 12282 Eagle Heart Dr., El Paso and 479A Tracey Lane, Hudson, Wisconsin.  Bruce Woods and Patricia Woods are the managers of B&P. B&P was formed on or about September 12, 2018.

18.     B&P has registered at least eight assumed names in Texas, including B&P, Revit Educ Srvc, Aiding Education, AFB Center, Savings Galore, VOIP Consumer Services, DLDS, Care Value Services, and NorthwestPharmacy.com.

19.     Defendants have used the B&P assumed names to open business checking accounts at numerous banks and credit unions, including University Federal Credit Union and J. P. Morgan Chase Bank N.A.  Defendants used these accounts to process consumer payments for third-party merchant-clients via RCPOs.  B&P transacts or has transacted business in this district and throughout the United States.

### *The Individual Defendants*

20.     **Bruce C. Woods** is an owner, president, and manager of Madera and is an owner and manager of B&P.

21.     Bruce Woods has signatory authority on multiple business checking accounts in the names of Madera and B&P, and has executed numerous assumed name certificates on behalf of Madera and B&P.

22.     Bruce Woods has executed payment processing agreements with Defendants' merchant-clients on behalf of Madera, including with the telemarketing scheme American Financial Benefits Center.

23.     Bruce Woods and his wife, Patricia Woods, have routinely drawn checks from Madera and B&P's bank accounts and directly debit funds from those accounts for personal expenses.

24.     At all times material to this Complaint, acting alone or in concert with others, Bruce Woods has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.

25.     Together with the other Defendants, Bruce Woods has, in numerous instances, misled financial institutions about the nature of Madera's and B&P's business and intentionally concealed from financial institutions the fact that Defendants were opening business checking accounts in order to process consumer payments for third-party merchant-clients.

26.     Bruce Woods has signed business checking account applications at numerous financial institutions that either misstate or omit the fact that Madera or B&P will use the accounts to process RCPOs for third-party merchant-clients.

27.     Bruce Woods has been involved in unlawful RCPO processing for more than a decade.  In 2008, the State of Ohio sued Bruce Woods and Madera's and B&P's predecessors – Banctech Processors, Inc. and Electronic Check Corporation – for unlawfully providing RCPO payment services to Canadian telemarketers, including the defendants in *FTC v. 9107-4021 Quebec, Inc., doing business as Med Provisions.*, No. 08-cv-1051 (N.D. Ohio Apr. 28, 2008), a bogus online pharmacy that sold sham "membership packages" to elderly consumers.  The Ohio court found Bruce Woods and his companies liable for more than $430,000 in consumer restitution and civil penalties. *State of Ohio v. Capital Payment Systems, LLC,* No. 08 CVH 007234 (Franklin County

Court of Common Pleas filed May 16, 2008; judgment entered against all defendants on August 13, 2012).

28.     Bruce Woods resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

29.     **Patricia Woods** is a manager and owner of Madera and a manager of B&P.

30.     Patricia Woods has signatory authority over Madera and B&P bank accounts.  She has signed applications and provided her information to financial institutions to open checking accounts in the names of Madera and B&P.

31.     Patricia Woods has signed checks on behalf of Madera and routinely written checks against Madera bank accounts that were cashed for the benefit of her and Bruce Woods.

32.     During all or part of the times material to this Complaint, acting alone or in concert with others, Patricia Woods has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.

33.     Patricia Woods was an officer of one of the corporate predecessors of Madera and B&P – Banctech Processors, Inc. – that the State of Ohio sued in 2008 for providing RCPO payment processing services for telemarketers engaged in unlawful conduct.  Like Madera and B&P, Banctech Processors, Inc. was a closely held corporation and had only seven employees.

34.     As Secretary of Banctech Processors, Inc., Patricia Woods executed a Certificate of Secretary dated August 18, 2009, authorizing the company to file for

bankruptcy protection under Chapter 11. Patricia Woods executed that certificate less than three weeks after the State of Ohio had filed its Motion for Summary Judgment against Banctech Processors, Inc. and Bruce Woods. On August 19, 2009, the day after Patricia Woods executed the certificate, Banctech Processors, Inc. counsel filed a Notice of Filing under Bankruptcy Code and Suggestion of Stay with the Ohio court.

35.     Patricia Woods resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

36.     **Victor Rodriguez ("Rodriguez")** is a Wisconsin resident and the son-in-law of Bruce and Patricia Woods.

37.     Rodriguez is an officer and manager of Madera.

38.     Rodriguez has used the email address vrodriguez@echeckprocessing.net to transact business on behalf of Defendants.

39.     During all or part of the times material to this Complaint, acting alone or in concert with others, Rodriguez has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.

40.     Rodriguez signed business checking account applications at numerous financial institutions that either misstate or omit the fact that Madera will use the accounts to process RCPOs for third-party merchant-clients.

41.     Rodriguez has signatory authority over Madera and B&P bank accounts. In multiple instances, he has provided assumed name certificates and application paperwork to financial institutions that misrepresented the nature of Madera's and B&P's business and the reason for opening the account.

9

42.     Between October 2017 and July 2018, Rodriguez opened business checking accounts in Madera's name with at least the following five financial institutions in Wisconsin: Associated Bank, Citizens State Bank, Hiawatha National Bank, MidWestOne Bank, and River Falls State Bank.

43.     Rodriguez worked for the corporate predecessors of Madera and B&P – Banctech Processors, Inc. and Electronic Check Corporation – in 2008, when the State of Ohio sued Bruce Woods and those companies for providing RCPO payment processing services for telemarketers engaged in unlawful conduct.

44.     In connection with the matters alleged herein, Rodriguez transacts or has transacted business in this district and throughout the United States.

## COMMON ENTERPRISE

45.     Defendants Madera and B&P have operated as a common enterprise while engaging in the unfair acts and practices alleged in the Complaint. Madera and B&P have conducted the business practices described herein through interrelated companies, which have a common business purpose, business functions, and employees; have commingled funds; and are both controlled by the individual defendants, Bruce and Patricia Woods and Rodriguez.

46.     Madera and B&P share the website echeckprocessing.net, and have both listed the residence of Bruce and Patricia Woods as their business address on applications for bank accounts.

47.     Because Madera and B&P have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below.

48.     Bruce and Patricia Woods and Rodriguez have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Madera and B&P that constitute the common enterprise.

## COMMERCE

49.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## REMOTELY CREATED PAYMENT ORDERS AND REMOTELY CREATED CHECKS

50.     An RCPO is a check or order of payment that the payee (typically a merchant or its agent) creates electronically, with software, using the payor's (typically a consumer) bank account information.

51.     Unlike with a conventional check, the payor does not sign the RCPO. Instead, the RCPO usually bears a statement indicating that the account holder (the account from which the money is to be drawn) authorized the check, such as "authorized by account holder" or "signature not required."

52.     RCPOs can be printed and manually deposited into the check clearing system like a conventional check.  An electronic version of an RCPO that looks like a paper check, but never exists in paper form, can also be deposited into the check clearing system using remote deposit capture – a system that allows a depositor to scan checks remotely and transmit the check images to a bank for deposit.

53.     RCPOs are generally subject to less oversight and monitoring than more prevalent methods of consumer payments, such as Automated Clearinghouse ("ACH") and debit and credit card transactions.

54.     Payments cleared through the ACH network are subject to oversight by NACHA - The Electronic Payments Association ("NACHA"), a self-regulatory trade association that enforces a system of rules, monitoring, and penalties for noncompliance. NACHA monitors the levels at which ACH debits are returned (or rejected) by consumers or consumers' banks, among other reasons, because high rates of returned transactions can be indicative of unlawful practices.

55.     The credit and debit card networks ("card networks"), such as MasterCard and Visa, also have rules regarding onboarding and monitoring of merchants, and penalties for noncompliance. These include heightened monitoring requirements for merchants designated as high risk, such as telemarketers.

56.     The card networks require network participants – including merchants, payment processors, and merchant banks – to monitor transactions for unusual activity indicative of fraud or deception. One prominent indicator is high chargeback rate. Chargebacks occur when customers contact their credit card issuing bank to dispute a charge appearing on their credit card account statement. Merchants with high chargeback rate may be placed in a monitoring program and their sponsoring banks may be subject to fees and fines.

57.     Unlike ACH and debit and credit card transactions, RCPOs are not subject to centralized and systemic monitoring.

58.     Since June 13, 2016, the TSR has prohibited sellers and telemarketers, whether making outbound calls or accepting inbound calls, from using RCPOs in telemarketing sales. The FTC added this prohibition to the TSR because, after an

1  extensive notice and comment process, it found little record of legitimate telemarketing

2  business using RCPOs.

## DEFENDANTS' UNLAWFUL BUSINESS PRACTICES

4       59.     Defendants offer third-party payment processing services to merchants-

5  clients using RCPOs.

7       60.     Defendants market their RCPO payment processing service to

8  telemarketers and other merchants that financial institutions and the card networks

9  consider high risk.  Their website, echeckprocessing.net, caters to merchants "considered

10  high risk by" banks and further states that "there are no chargebacks with" RCPOs.

11       61.     Although the TSR specifically bars the use of RCPOs in telemarketing

13  sales, some of Defendants' largest merchant-clients, including Educare, sell their products

14  or services through telemarketing.

15       62.     Defendants file assumed name and trademark or tradename certificates for

16  Madera and B&P in Texas and Wisconsin under the names and dbas of their merchant-

17  clients.

19       63.     Using these certifications, Defendants apply for business checking

20  accounts with financial institutions, misrepresenting the services provided by Madera or

21  B&P and failing to disclose that Defendants will use the accounts to process consumer

22  payments for third-parties.

23       64.     For example, a Madera application for business checking accounts at

24  Pioneer Bank SSB in Sugar Land, Texas, under the dbas Aiding Education and Savings

26  Galore, which Bruce Woods signed on June 28, 2018, falsely represented that Madera

operated a student loan document preparation assistance service (Aiding Education) and a "savings club" (Savings Galore).

65.     The June 28, 2018 application also falsely represented that Madera does not engage in processing payments for third-parties.

66.     Additionally, on or about June 6, 2018, Madera opened a business checking account with Citizens State Bank in Hudson, Wisconsin, to process RCPOs for Educare.  Defendants opened the account under the name Madera Merchant Services doing business as Revit-Educ-Srvc.

67.     The application that Defendants submitted to Citizens State Bank gave no indication that Defendants would use the business checking account to process payments for a third-party telemarketer.  Instead, Defendants falsely identified Madera as a "Parent Holding Company" that provides "Document Preparation Service" under the name Revit-Educ-Srvc.

68.     After Defendants secure the business checking accounts, often using false or misleading information, they deposit printed or electronic copies of RCPOs that they create with software, which include the name and often the phone number of their merchant-clients.  These items enter into the check clearing system and are presented to the financial institutions of consumers.

69.     The funds from consumers' accounts, drawn through Defendants' RCPOs, are deposited into the business checking accounts that Defendants opened using their merchant-clients' dbas.

70.     Ultimately, Defendants transfer the consumer funds, minus Defendants' service fee, to their merchant-clients.

71.   In numerous instances, RCPOs deposited by Defendants are not honored by the consumers' financial institutions.  Consumers' financial institutions have provided the following reasons for returning RCPOs generated by Defendants:  "stop payment"; "forgery"; "closed account"; "unable to locate"; and "insufficient funds."

72.   In many instances, high rates of returned (dishonored) payments, at times exceeding 20%, have led financial institutions that host Defendants' accounts to investigate the accounts and their owners.  Such investigations have often resulted in the closing of Defendants' accounts.

73.   To maintain their RCPO processing scheme, Defendants have continually opened new business checking accounts at different financial institutions.

74.   For example, within days of opening a business checking account with Citizens State Bank in Hudson, Wisconsin, under the name Madera Merchant Services doing business as Revit-Educ-Srvc (an Educare dba), Defendants made a $6,465 deposit made up entirely of RCPOs drawn against consumer bank accounts from various states. Many of these RCPOs were dishonored and returned to Citizens State Bank.

75.   Citizens State Bank then discovered that Madera had filed eight different trademark names (dbas) in the state of Wisconsin within six months.  The bank also discovered that many consumers posted complaints on the internet claiming that companies using those dbas had fraudulently taken funds from their bank accounts.

76.   On or about June 12, 2018, Citizens State Bank froze the funds in the Madera accounts, and ultimately closed them on June 20, 2018.

77.   Between June 20, 2018 and June 29, 2018, Defendants opened new accounts for RCPO processing under dbas of Educare Center Services with at least four

other banks in Texas/Wisconsin, including BancCorpSouth Bank, First United Bank and Trust Company, Pioneer Bank, SSB, and Prosperity Bank.

78. Within the last five years, Defendants have opened at least 60 business checking accounts at 25 different financial institutions, mostly in Texas and Wisconsin, to enable their processing scheme. Defendants have processed more than $18 million in consumer payments on behalf of their merchant-clients through these accounts.

79. In some instances, Defendants have opened multiple, seemingly unrelated, accounts for a merchant-client under two or more dbas at the same bank or credit union.

80. Defendants' RCPO processing scheme, as described above, has caused and is likely to cause substantial injury to consumers. Within the last four years, Defendants have processed consumer payments in excess of $13 million for at least three telemarketing schemes sued by the FTC and state attorneys general for consumer fraud or deception, including:

- Educare – credit card interest rate reduction scheme for which Defendants processed at least $11.8 million, *FTC v. Educare Center Services* (W.D. Tex. filed concurrently with this action);

- Impetus Enterprise, Inc. ("Impetus") – student loan debt relief scheme for which Defendants processed at least $580,000, *FTC v. Impetus Enterprise, Inc.*, No. 8:18-cv-01987 (C.D. Cal. filed Nov. 6, 2018, preliminary injunction entered Nov. 29, 2018);

- American Financial Benefits Center ("AFB Center") – student loan debt relief scheme for which Defendants processed at least $566,000, *FTC v. American*

*Financial Benefits Center*, No. 4:18-cv-00806 (N.D. Cal. filed Feb. 7, 2018,

preliminary injunction entered Nov. 29, 2018).

81.    Defendants executed at least $8.646 million of the above-noted RCPO

processing after June 13, 2016, the date at which using RCPOs in any telemarketing sales

became illegal under the TSR.  After June 13, 2016, Defendants processed more than:

- $7,500,000 for Educare;

- $580,000 for Impetus; and

- $566,000 for AFB Center.

**DEFENDANTS HAVE KNOWN OR CONSCIOUSLY AVOIDED KNOWING
THAT THEIR MERCHANT CLIENTS ARE ENGAGED OR LIKELY TO
ENGAGE IN DECEPTIVE OR FRAUDULENT TELEMARKETING**

82.    Defendants, including Bruce and Patricia Woods and Rodriguez, have

known or consciously avoided knowing that some of their largest merchant-clients –

including Educare, Impetus, and AFB Center – have been or are likely to have been

engaged in deceptive or fraudulent telemarketing.

83.    Defendants have specifically catered to high risk merchants who find it

hard to obtain more conventional payment processing and are concerned about

chargebacks by consumers.

84.    Defendants' website includes an "Echeck Processing Merchant

Application" ("Application").  The Application includes checkboxes for "Inbound Call

Center" and "Outbound Call Center" in a field titled "Type of Business."  The

Application further states:

Describe specific Products or Services offered by company and how
Echeck services will be used in connection with these Products or
Services.  Please provide complete details to include each web site

address, each phone number for inbound call centers, and each phone number utilized for customer service/consumer complaints. If any Products or Services are sold telephonically, please provide a copy of the sales and verification script for each Product or Service being offered. Attach additional sheet or other information if needed (e.g. marketing materials, business plan, etc.).

85. Defendants have known that many of the RCPOs they generate for their merchant-clients have been returned for reasons such as "stop payment," "forgery," "closed account," and "unable to locate."

86. Defendants, including Bruce and Patricia Woods and Rodriguez, have received notices and telephone calls from financial institutions that closed Madera's and B&P's accounts in which the financial institutions informed them about their concerns with Defendants' business practices, consumer complaints about fraud, and returned RCPOs.

87. Defendants' telemarketing merchant-clients – including Educare, Impetus, and AFB Center – have been sued by the FTC, received scores of Better Business Bureau ("BBB") complaints, and/or received "F" BBB ratings.

88. Educare, one of Defendants' oldest and most prolific merchant-clients, is a credit card interest rate reduction telemarketer that has received more than 100 BBB complaints and has had an "F" Rating from the BBB since at least February 2015. Numerous complaints, publicly available on the BBB's website, state that Educare contacts consumers via a phone call.

89. Since at least 2017, Defendants have opened no fewer than 17 accounts for processing RCPOs for Educare at 15 banks and credit unions because such accounts have often been quickly closed by the banks and credit unions due to high return rates or because the banks and credit unions deem the accounts a high risk.

18

90. Defendants have opened accounts under various dbas of Educare, including accounts under the dbas Tripletel, Inc., Revit-Educ-Srvc, L.L. Vision, and Card Value Services. At least four of the Educare accounts had return rates of 20% or more.

91. As the examples below demonstrate, banks and credit unions that Defendants use for their RCPO processing often determine that these accounts are used for dubious conduct.

92. Defendants opened two business checking accounts at University Federal Credit Union in Austin, Texas, under the dbas Revit-Educ-Srvc and Aiding Education to process RPCOs for Educare and Impetus, respectively.

93. After RCPOs deposited into the Revit-Educ-Srvc account were returned, as part of the credit union's standard process regarding returned checks, a risk analyst reviewed the "checks" Defendants deposited into their account and was troubled by what she discovered. The items deposited into Defendants' account were not checks, but unsigned RCPOs drawn against the bank accounts of consumer from various states.

94. Because the items were not signed by the consumers whose bank accounts the funds would be drawn on, the risk analyst considered the RCPOs to be high risk items. In the risk analyst's 13 years of experience working with returned checks, she had never observed so many unsigned RCPOs deposited into a single account.

95. The risk analyst called the toll free number 877-403-1659, printed on one of Defendants' returned Revit-Educ-Srvc RCPOs, and spoke to a man with a heavy foreign accent who told the risk analyst that she had reached a "credit card service" company. She asked the man to clarify what that meant and he stated that the company "lowers the interest rate on your credit card." When the risk analyst asked him if the

1    name of the business was Revit-Educ-Srvc, he said "just a moment," and then came back

2    on the line and told her that if she was not a customer or client, then he could not release

3    that information. After the risk analyst reported her findings, the credit union put a hold

4    on the deposited funds, refused to accept new deposits, and began the process of closing

5    Defendants' accounts.

6
      96.     Defendants had been providing RCPO processing services to Impetus

7    since at least December 2017. Between December 12, 2017, and September 19, 2018,

8
     Defendants sequentially opened accounts to process RCPOs for their merchant-client

9
     Impetus using Impetus dbas Aiding Education and IDR Education at no less than six

10
     banks and credit unions, because banks and credit unions promptly closed such accounts

11
     upon learning of the high numbers of returned checks, online consumer complaints, and

12

13   due to the high risk nature of the unsigned RCPOs.

14
      97.     For example, on or about July 10, 2018, Defendants opened a business

15   checking account for Impetus under its dba IDR Education at R Bank in Georgetown,

16
     Texas. After numerous RCPOs Defendants deposited into the account were returned, on

17
     or about August 7, 2018, R Bank sent a letter to Bruce Woods informing him that R

18

19   Banks was closing the accounts within 10 days and would no longer accept deposits.

20
      98.     Defendants continued to process RCPOs on behalf of Impetus until the

21   FTC sued Impetus on November 6, 2018. Defendants were served with a copy of the

22
     Temporary Restraining Order entered against Impetus on or about November 16, 2018.

23
      99.     Around the spring of 2016, Defendants began providing RCPO processing

24

25   services to AFB Center. On February 7, 2018, the FTC sued AFB Center, alleging that

26   AFB Center and its owner had operated a deceptive student loan debt relief telemarketing

27

28

1    scheme. *See FTC v. American Financial Benefits Center,* No. 4:18-cv-00806 (N.D. Cal.

2    Feb. 7, 2018).  The FTC announced the action on the same day.  *FTC Charges Ameritech*

3    *and Brandon Frere with Deceiving Consumers* https://www.ftc.gov/news-events/press-

4    releases/2018/02/ftc-charges-student-loan-debt-relief-scheme-deceiving-consumers.

5    100.    The FTC's action specifically challenged AFB Center's telemarketing

6
7    conduct, and the TSR bars the use of RCPOs for any telemarketing sales.  Nevertheless,

8    Defendants continued to provide RCPO processing to AFB Center through at least

9    November 2018, approximately nine months after the FTC sued AFB Center.  Moreover,

10   Defendants opened new business checking accounts to process for AFB Center on or

11   about July 12, 2018, at Associated Bank, and on September 11, 2018, at Horizons Bank.

12
13   101.    Based on the facts and violations of law alleged in this Complaint, the

14   FTC has reason to believe that Defendants are violating or are about to violate laws

15   enforced by the Commission.

16   **OHIO'S TELEPHONE SOLICITOR'S REGISTRATION REQUIREMENT**

17   102.    Ohio's Telephone Solicitation Sales Act, O.R.C. 4719.01 *et seq.*, generally

18
19   requires telephone solicitors that make telephone solicitations to individuals in Ohio to

20   register with and file a copy of a surety bond with the Ohio Attorney General.

21   103.    Multiple companies that Defendants processed payments for – including

22   Educare, Impetus, and AFB Center – were required to register as telephone solicitors and

23   file copies of surety bonds with the Ohio Attorney General.  These companies did not

24
25   register as telephone solicitors, or file copies of surety bonds, with the Ohio Attorney

26   General.

27
28

1    104.    Defendants knew, or should have known, that companies Defendants

2    processed payments for – including Educare, Impetus, and AFB Center – were not in

3    compliance with the registration and bonding requirements of Ohio's Telephone

4    Solicitation Sales Act.

5
## VIOLATIONS OF THE FTC ACT
6

7    105.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or

8    deceptive acts or practices in or affecting commerce."

9    106.    Acts or practices are unfair under Section 5 of the FTC Act if they cause

10   or are likely to cause substantial injury to consumers that consumers cannot reasonably

11   avoid themselves and that are not outweighed by countervailing benefits to consumers or

12   competition. 15 U.S.C. § 45(n).

13

14                              **COUNT I**
                     **Unfair Payment Processing**
15                        **(By the FTC)**

16   107.    As described in paragraphs 14-101 above, in numerous instances

17   Defendants have:

18

19   a.    Provided financial institutions with false or misleading information

20   to obtain and maintain checking accounts, which Defendants used

21   to process consumer payments for third-party merchants engaged

22   in fraudulent or deceptive marketing practices; and/or

23   b.    Processed consumer payments for third-party merchants that were

24   engaged in, or likely to engage in, fraudulent or deceptive

25   marketing practices.

26

27

28

                              22

108.     Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

109.     Therefore, Defendants' acts or practices, as set forth in Paragraph 107 above, constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a), (n).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

110.     In 1994, Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108.  The FTC adopted the original TSR in 1995, extensively amended it in 2003, and amended certain sections thereafter.

111.     Defendants' merchant-clients Educare, Impetus, and AFB Center are all "sellers" or "telemarketers" engaged in "telemarketing" as defined by the TSR, 16 C.F.R. § 310.2(dd), (ff), and (gg).

112.     A "seller" means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to a customer in exchange for consideration. 16 C.F.R. § 310.2(dd).

113.     A "telemarketer" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(ff).

114.     "Telemarketing" means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or

1    more telephones and which involves more than one interstate telephone call. 16 C.F.R. §

2    310.2(gg).

3        115.    The TSR prohibits sellers and telemarketers from creating or causing to be

4    created, directly or indirectly, a remotely created payment order (RCPO) as payment for

5    goods or services offered or sold through telemarketing. 16 C.F.R. § 310.4(a)(9).  A

6    remotely created payment order includes a remotely created check 16 C.F.R. § 310.2(cc).

7

8        116.    It is a deceptive telemarketing act or practice and a violation of this Rule

9    for a person to provide substantial assistance or support to any seller or telemarketer

10   when that person knows or consciously avoids knowing that the seller or telemarketer is

11   engaged in any act or practice that violates Section 310.3(a), (c), or (d) or Section 310.4

12   of this Rule. 16 C.F.R.

13   § 310.3(c).

14

15       117.    The TSR prohibits sellers and telemarketers from making any false or

16   misleading statements to induce a person to pay for goods or services.  16 C.F.R. §

17   310.3(a)(4).

18       118.    The Defendants knew or consciously avoided knowing that a telemarketer

19   made a false or misleading statement to induce a person to pay for goods or services

20   during the time periods set forth in the complaint.

21

22       119.    Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c),

23   and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR

24   constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of

25   Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

26

27

28

## COUNT II
### Assisting and Facilitating Merchants Engaged in Unlawful Telemarketing
### (By the FTC and the State of Ohio)

120.    As described in paragraphs 14-101 above, in numerous instances, Defendants have provided substantial assistance and support, though processing of consumer payments using RCPOs, to one or more sellers or telemarketers, who Defendants knew, or consciously avoided knowing, were violating § 310.3(a)(4) and § 310.3(a)(9) of the TSR by:

   a. Making a false or misleading statement to induce consumers to pay for goods or services; and/or

   b. Using RCPOs as payment for goods or services offered or sold through telemarketing.

121.    Defendants' acts or practices, as described in Paragraph 120 above, violate the TSR, 16 C.F.R. § 310.3(b).

## VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT

122.    Ohio's CSPA, O.R.C. 1345.01 *et seq.*, generally prohibits "suppliers" from engaging in unfair or deceptive acts or practices in connection with "consumer transactions."

123.    Defendants are "suppliers" as defined by R.C. 1345.01(C) because they, at all time relevant hereto, were engaged in the business of effecting or soliciting consumer transactions, whether or not they dealt directly with the consumers.

### COUNT III
### Unfair Payment Processing
### (By the State of Ohio)

124.    As described in paragraphs 14-101 above, Defendants committed unfair or deceptive acts or practices in violation of the CSPA, O.R.C. 1345.02, by:

    a.    Providing financial institutions with false or misleading information to obtain and maintain checking accounts, which Defendants used to process consumer payments for third-party merchants engaged in fraudulent or deceptive marketing practices; and/or

    b.    Processing consumer payments for third-party merchants that Defendants knew, or should have known, were engaged in, or likely to engage in, fraudulent or deceptive marketing practices.

### COUNT IV
### Processing Debits that are Unauthorized by the Account Holder
### (By the State of Ohio)

125.    As described in paragraphs 14-101 above, Defendants committed unfair or deceptive acts or practices in violation of the CSPA, O.R.C. 1345.02, by processing debits, including through RCPOs, to Ohio consumers' bank accounts that are unauthorized by the account holder.

*Using RCPO's - to Bank accts that are unauthorized by acct holder*

### COUNT V
### Processing Debits on Behalf of Telephone Solicitors Who Were Not Properly Registered and Bonded with the State of Ohio
**(By the State of Ohio)**

126.     As described in paragraphs 14-101 above, Defendants committed unfair or deceptive acts or practices in violation of the CSPA, O.R.C. 1345.02, by processing debits, including through RCPOs, to Ohio consumers' bank accounts on behalf of telephone solicitors who were not properly registered with the Ohio Attorney General's Office and bonded as required pursuant to the Ohio Telephone Solicitations Sales Act, O. R.C. 4719.02(A) and 4719.04(A).

### CONSUMER INJURY

127.     Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, the TSR, and CSPA, O.R.C. 1345.02.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

### THIS COURT'S POWER TO GRANT RELIEF

128.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

129.    Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the TSR, including the rescission or reformation of contracts, and the refund of money.

130.    Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to allow Plaintiff State of Ohio to enforce its state law claims against Defendants in this Court for violations of R.C. 1345.01 *et seq*, and O.R.C. 1345.07, authorizes this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the CSPA including injunctive relief, rescission or reformation of contract, the refund of monies paid, and the disgorgement of ill-gotten monies.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs FTC and the State of Ohio, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, the TSR, Section 1345.07 of the Ohio CSPA, and the Court's own equitable powers, request that the Court:

A.    Award Plaintiffs such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including temporary and preliminary injunctions, and an order providing for the turnover of business records, an asset freeze, immediate access and the appointment of a receiver, and the disruption of internet domain and telephone services;

1   B. Enter a permanent injunction to prevent future violations of the FTC Act,

2 the TSR, and the Ohio CSPA, O.R.C. 1345.01 *et seq.*:

3   C. Award Plaintiffs such relief as the Court finds necessary to redress injury

4 to consumers resulting from Defendants' violations of the FTC Act, the TSR and the Ohio

5 CSPA, including rescission or reformation of contracts, restitution, the refund of monies

6

7 paid, and the disgorgement of ill-gotten monies; and

8   D. Award Plaintiffs the costs of bringing this action, as well as such other and

9 additional relief as the Court may determine to be just and proper.

10

11           Respectfully submitted,

12

            ALDEN F. ABBOTT

13            General Counsel

14 Dated:

              /s/

15            J. Ronald Brooke, Jr.

            Christopher E. Brown

16            Federal Trade Commission

            600 Pennsylvania Ave., NW

17            Mailstop CC-8528

18            Washington, DC 20580

            (202) 326-3484 / jbrooke@ftc.gov

19            (202) 326-2825 / cbrown3@ftc.gov

20            Attorneys for Plaintiff

            FEDERAL TRADE COMMISSION

21

22

            DAVE YOST

23            Attorney General

24

25            Jeffrey Loeser (pending)

            (Ohio Bar #82144)

26            Erin Leahy (pending)

            (Ohio Bar #69509)

27            Assistant Attorneys General

            Consumer Protection Section

28

30 E. Broad Street, 14th Floor
Columbus, Ohio 43215
(614) 466-8831
jeff.loeser@OhioAttorneyGeneral.gov
erin.leahy@OhioAttorneyGeneral.gov

Attorneys for Plaintiff
STATE OF OHIO

# Exhibit "B"

RECEIVED

JUDGE KATHLEEN CARDONE

FILED

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

2019 JUL 19  PM 2: 01

CLERK
WESTERN DISTRICT TEXAS
BY_____ DEPUTY CLERK

Federal Trade Commission, and

State of Ohio ex rel. Attorney General
Dave Yost,

          Plaintiffs,

v.

**Madera Merchant Services, LLC**, dba E
Check Processing and
echeckprocessing.net, a Texas company,

**B&P Enterprises, LLC**, a Texas
company,

**Bruce C. Woods**, individually and as an
owner, officer, member, and/or manager
of Madera Merchant Services, LLC and
B&P Enterprises, LLC,

**Patricia Woods**, individually and as an
owner, manager, and/or member of
Madera Merchant Services, LLC and
B&P Enterprises, LLC,

and

**Victor Rodriguez**, individually and as an
officer, member, and/or manager of
Madera Merchant Services, LLC and
B&P Enterprises, LLC,

          Defendants.

No.  __:19-CV-_____

EP19CV0195

[PROPOSED]

**EX PARTE TEMPORARY
RESTRAINING ORDER WITH ASSET
FREEZE, APPOINTMENT OF A
TEMPORARY RECEIVER, AND
OTHER EQUITABLE RELIEF, AND
ORDER TO SHOW CAUSE WHY A
PRELIMINARY INJUNCTION
SHOULD NOT ISSUE**

**(FILED UNDER SEAL)**

      Plaintiffs, Federal Trade Commission ("FTC") and the State of Ohio (collectively,

"Plaintiffs"), have filed their Complaint for Permanent Injunction and Other Equitable

Relief under Section 13(b) and 19 of the FTC Act, 15 U.S.C. § 53(b), 57b, the

Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"),

15 U.S.C. §§ 6101-6108, and Ohio Consumer Sales Practices Act ("CSPA"), R.C.

1

1  1345.07 (Docket No. ____), and have moved, under Fed. R. Civ. P. 65(b), for a

2  temporary restraining order, asset freeze, other equitable relief, and an order to show

3  cause why a preliminary injunction should not issue against Madera Merchant Services,

4  LLC; B&P Enterprises, LLC; Bruce Woods; Patricia Woods; and Victor Rodriguez

5  (collectively, "Defendants") (Docket No. ____).

6

7                          **FINDINGS OF FACT**

8          The Court, having considered the Complaint, the *ex parte* Motion for a

9  Temporary Restraining Order, declarations, exhibits, and the memorandum of points and

10  authorities filed in support thereof, and being otherwise advised, finds that:

11          A.     This Court has jurisdiction over the subject matter of this case, and there is

12  good cause to believe that it will have jurisdiction over all parties hereto and that venue in

13  this district is proper.

14

15          B.     Defendants operate a third-party payment processing scheme that uses

16  remotely created payment orders or remotely created checks ("RCPOs") to withdraw

17  money from consumers' accounts on behalf of third-party merchants.  Defendants

18  routinely withdraw funds from consumers for merchants engaged in fraud or deceptive

19  marketing.

20

21          C.     Defendants routinely provide RCPO payment processing services to

22  telemarketers in violation of the TSR, which expressly prohibits collecting payments

23  through RCPOs in connection with telemarketing sales.  16 C.F.R. 310.4(a)(9).  They

24  have processed more than $8.6 million in RCPO payments generated through

25  telemarketing since June 13, 2016, the date when the TSR prohibition on the use of

26  RCPOs in telemarketing transactions went into effect.

27

28

D.      To execute their scheme, Defendants have opened numerous business checking accounts under various assumed names with numerous banks and credit unions. Defendants routinely fail to disclose to the financial institutions that the accounts will be used to process consumer payments for third-party merchants via RCPOs.

E.      There is good cause to believe that Defendants have engaged in and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the TSR, 16 C.F.R. Part 310, and the Ohio CSPA, R.C. 1345.01 *et seq.*, and that Plaintiffs are therefore likely to prevail on the merits of this action.  As demonstrated by the declarations of bank and credit union employees, declarations of investigators from the FTC and the Ohio Attorney General's Office, bank records, and other documentation filed by Plaintiffs, Plaintiffs have established a likelihood of success in showing that Defendants have unlawfully processed consumer payments through RCPOs in violation of the FTC Act, the TSR, and the Ohio CSPA.

F.      There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of the FTC Act, the TSR, and the Ohio CSPA unless Defendants are restrained and enjoined by order of this Court.

G.      There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers – including monetary restitution, rescission, disgorgement or refunds – will occur from the sale, transfer, destruction or other disposition or concealment by Defendants of their assets or records, unless Defendants are immediately restrained and enjoined by order of this Court; and that, in accordance with Fed. R. Civ. P. 65(b) the interests of justice require that this Order be granted without prior notice to Defendants.  Thus, there is good cause for

1  relieving Plaintiffs of the duty to provide Defendants with prior notice of its Application

2  for a Temporary Restraining Order.

3    H.    Good cause exists for appointing a temporary receiver over the

4  Receivership Entities, freezing Defendants' assets, permitting the Receiver immediate

5  access to Defendants' business premises to obtain and take control of Defendants'

6  business records wherever the records are stored, and permitting the Plaintiffs and the

7  Receiver to take expedited discovery.

8

9    I.    Weighing the equities and considering Plaintiffs' likelihood of ultimate

10  success on the merits, a temporary restraining order with an asset freeze, the appointment

11  of a temporary receiver, immediate access to Defendants' business premises and records,

12  expedited discovery, and other equitable relief is in the public interest.

13

14    J.    This Court has authority to issue this Order pursuant to Section 13(b) of

15  the FTC Act, 15 U.S.C. § 53(b); Federal Rule of Civil Procedure 65; and the All Writs

16  Act, 28 U.S.C. § 1651.

17    K.    No security is required of any agency of the United States for issuance of a

18  temporary restraining order.  Fed. R. Civ. P. 65(c).

19

20                            **DEFINITIONS**

21    For the purpose of this Order, the following definitions shall apply:

22    A.    **"Corporate Defendants"** means Madera Merchant Services, LLC, B&P

23  Enterprises, LLC, and each of their subsidiaries, affiliates, successors, and assigns.

24    B.    **"Defendants"** means the Corporate Defendants and the Individual

25  Defendants, individually, collectively, or in any combination.

26

27

28

C.    **"Document"** is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including e-mail and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form.  A draft or non-identical copy is a separate Document within the meaning of the term.

D.    **"Electronic Data Host"** means any Person in the business of storing, hosting, or otherwise maintaining electronically stored information. This includes, but is not limited to, any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

E.    **"Individual Defendants"** means Bruce Woods, Patricia Woods, and Victor Rodriguez, individually, collectively, or in any combination.

F.    **"Payment Processing"** means providing a Person, directly or indirectly, with means or service used to charge or debit financial accounts through the use of any payment method or mechanism, including, but not limited to, credit cards, debit cards, prepaid cards, stored value cards, ACH Debits, Remotely Created Payment Orders, and

Remotely Created Checks.  Whether accomplished through the use of software or otherwise, Payment Processing includes, among other things:  (a) reviewing and approving Merchant applications for payment processing services; (b) providing the means to transmit sales transaction data from third-party merchants to banks, credit unions, Payment Processors, independent sales organizations, payment facilitators or other financial institutions; (c) clearing, settling, or distributing proceeds of sales transactions from banks, credit unions, or other financial institutions to third-oary merchants; or (d) processing chargebacks or returned Remotely Created Payment Orders, checks or Automated Clearing House (ACH) transactions on behalf of third-party merchants.

G.      "**Payment Processor**" means any Person providing Payment Processing services in connection with another Person's sale of goods or services, or in connection with any charitable donation.

H.      "**Person**" means any natural person or any entity, corporation, partnership, or association of persons.

I.      "**Remotely Created Payment Order**" or "**RCPO**" means a payment instruction or order, whether created in electronic or paper format, drawn on a payor's account that is initiated or created by or on behalf of the payee, and which is deposited into or cleared through the check clearing system.  For purposes of this definition, an account includes any financial account or credit or other arrangement that allows checks, payment instructions, or orders to be drawn against it that are payable by, through, or at a bank.

J.      "**Receiver**" means the temporary receiver appointed in Section XII of this Order and any deputy receivers that shall be named by the temporary receiver.

K.      "**Receivership Entities**" means the Corporate Defendants as well as any other entity that has conducted any business related to the Defendants' RCPO payment processing scheme, including receipt of assets or funds derived from any activity that is the subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any Defendant.

L.      "**Seller**" means any Person who, in connection with a Telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to a customers in exchange for consideration.

M.      "**Telemarketer**" means any Person who, in connection with Telemarketing, initiates or receives telephone calls to or from a customer or donor.

N.      "**Telemarketing**" means any plan, program, or campaign that is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more telephones.

## ORDER

### I.      PROHIBITION REGARDING PAYMENT PROCESSING

**IT IS THEREFORE ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, are temporarily restrained and enjoined from Payment Processing.

## II.    PROHIBITIONS ON VIOLATING THE TSR

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with Telemarketing of any product or service, are temporarily restrained and enjoined from violating any provision of the TSR, 16 C.F.R. Part 310, attached as Attachment A

## III.    PROHIBITION ON RELEASE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from:

A.    Selling, renting, leasing, transferring, or otherwise disclosing, the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order; and

B.    Benefitting from or using the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order.

Provided, however, that Defendants may disclose such identifying information to a law enforcement agency, to their attorneys as required for their defense, as required by

any law, regulation, or court order, or in any filings, pleadings or discovery in this action in the manner required by the Federal Rules of Civil Procedure and by any protective order in the case.

## IV.    ASSET FREEZE

**IT IS FURTHER ORDERED** that Defendants and Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from:

A.    Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any assets that are:

1. owned or controlled, directly or indirectly, by any Defendant;

2. held, in part or in whole, for the benefit of any Defendant;

3. in the actual or constructive possession of any Defendant; or

4. owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant.

B.    Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant or subject to access by any Defendant, except as necessary to comply with written requests from the Receiver acting pursuant to its authority under this Order;

C.      Incurring charges or cash advances on any credit, debit, or ATM card issued in the name, individually or jointly, of any corporate defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant or of which any Defendant is an officer, director, member, or manager. This includes any corporate bankcard or corporate credit card account for which any Defendant is, or was on the date that this Order was signed, an authorized signor; or

D.      Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Defendant.

The assets covered by this Section shall include: (1) all assets of Defendants as of the time this Order is entered; and (2) assets obtained by Defendants after this Order is entered if those assets are derived from any activity that is the subject of the Complaint in this matter or that is prohibited by this Order. This Section does not prohibit any transfer of assets to the Receiver or repatriation of assets specifically required by this Order, and does not freeze JPMorgan Bank account X2365.

## V.      DUTIES OF ASSET HOLDERS AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial or brokerage institution, Electronic Data Host, credit card processor, Payment Processor, merchant bank, acquiring bank, independent sales organization, third party processor, payment gateway, insurance company, business entity, or Person who receives actual notice of this Order (by service or otherwise) that:

(a) has held, controlled, or maintained custody, through an account or otherwise, of any Document on behalf of any Defendant or any asset that has been owned or controlled, directly or indirectly, by any Defendant; held, in part or in

whole, for the benefit of any Defendant; in the actual or constructive possession of any Defendant; or owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant;

(b) has held, controlled, or maintained custody, through an account or otherwise, of any Document or asset associated with credits, debits, or charges made on behalf of any Defendant, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities; or

(c) has extended credit to any Defendant, including through a credit card account, shall:

A.      Hold, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such Document or asset, as well as all Documents or other property related to such assets, except by further order of this Court; provided, however, that this provision does not prohibit an individual defendant from incurring charges on a personal credit card established prior to entry of this Order, up to the pre-existing credit limit;

B.      Deny any Person, except the Receiver, access to any safe deposit box, commercial mail box, or storage facility that is titled in the name of any Defendant, either individually or jointly, or otherwise subject to access by any Defendant;

C.   Provide Plaintiffs' counsel and the Receiver, within three (3) days of receiving a copy of this Order, a sworn statement setting forth, for each asset or account covered by this Section:

1.   The identification number of each such account or asset;

2.   The balance of each such account, or a description of the nature and value of each such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the Person whom such account or other asset was remitted; and

3.   The identification of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access by any Defendant; and

D.   Upon the request of Plaintiffs' counsel or the Receiver, promptly provide Plaintiffs' counsel and the Receiver with copies of all records or other Documents pertaining to any account covered by this Section or asset, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mail boxes, and storage facilities.

This Section does not prohibit any transfer of assets to the Receiver or repatriation of assets specifically required by this Order.

## VI.    FINANCIAL DISCLOSURES

**IT IS FURTHER ORDERED** that each Defendant, within five (5) days of service of this Order upon them, shall prepare and deliver to Plaintiffs' counsel and the Receiver:

A.      Completed financial statements on the forms attached to this Order as **Attachment B** (Financial Statement of Individual Defendant) for each Individual Defendant, and **Attachment C** (Financial Statement of Corporate Defendant) for each Corporate Defendant; and

B.      Completed **Attachment D** (IRS Form 4506, Request for Copy of a Tax Return) for each Defendant.

## VII.    FOREIGN ASSET REPATRIATION

**IT IS FURTHER ORDERED** that within five (5) days following the service of this Order, each Defendant shall:

A.      Provide Plaintiffs' counsel and the Receiver with a full accounting, verified under oath and accurate as of the date of this Order, of all assets, Documents, and accounts outside of the United States which are:  (1) titled in the name, individually or jointly, of any Defendant; (2) held by any Person for the benefit of any Defendant or for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant;

B.      Take all steps necessary to provide Plaintiffs' counsel and the Receiver access to all Documents and records that may be held by third parties located outside of the territorial United States of America, including signing the Consent to Release of Financial Records appended to this Order as **Attachment E**.

C.      Transfer to the territory of the United States any and all Documents and assets located in foreign countries which are: (1) titled in the name, individually or jointly, of any Defendant; (2) held by any Person for the benefit of any Defendant or for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant; and

D.      The same business day as any repatriation, (1) notify the Receiver and counsel for Plaintiffs of the name and location of the financial institution or other entity that is the recipient of such Documents or assets; and (2) serve this Order on any such financial institution or other entity.

## VIII.   NON-INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by this Order, including, but not limited to:

A.      Sending any communication or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a

"duress" event has occurred under the terms of a foreign trust agreement until such time that all Defendants' assets have been fully repatriated pursuant to this Order; or

B.      Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Defendants' assets have been fully repatriated pursuant to this Order.

### IX.      CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that Plaintiffs may obtain credit reports concerning any Defendants pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to Plaintiffs.

### X.      PRESERVATION OF RECORDS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from:

A.      Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, Documents that relate to:  (1) the business, business practices, assets, or business or personal finances of any Defendant; (2) the business practices or finances of entities directly or indirectly under the control of any Defendant; or (3) the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

B.      Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect Defendants' incomes, disbursements, transactions, and use of Defendants' assets.

## XI.      REPORT OF NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from creating, operating, or exercising any control over any business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing Plaintiffs' counsel and the Receiver with a written statement disclosing:  (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## XII.      TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that Susan M. Forbes is appointed as temporary receiver of the Receivership Entities with full powers of an equity receiver. The Receiver shall be solely the agent of this Court in acting as Receiver under this Order.

## XIII.      DUTIES AND AUTHORITY OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following:

A.      Assume full control of Receivership Entities by removing, as the Receiver

deems necessary or advisable, any director, officer, independent contractor, employee,

attorney, or agent of any Receivership Entity from control of, management of, or

participation in, the affairs of the Receivership Entity;

B.      Take exclusive custody, control, and possession of all assets and

Documents of, or in the possession, custody, or under the control of, any Receivership

Entity, wherever situated;

C.      Take exclusive custody, control, and possession of all Documents or assets

associated with credits, debits, or charges made on behalf of any Receivership Entity,

wherever situated, including reserve funds held by payment processors, credit card

processors, merchant banks, acquiring banks, independent sales organizations, third party

processors, payment gateways, insurance companies, or other entities;

D.      Conserve, hold, manage, and prevent the loss of all assets of the

Receivership Entities, and perform all acts necessary or advisable to preserve the value of

those assets.  The Receiver shall assume control over the income and profits therefrom

and all sums of money now or hereafter due or owing to the Receivership Entities.  The

Receiver shall have full power to sue for, collect, and receive, all assets of the

Receivership Entities and of other Persons whose interests are now under the direction,

possession, custody, or control of, the Receivership Entities.  Provided, however, that the

Receiver shall not attempt to collect any amount from a consumer if the Receiver

believes the consumer's debt to the Receivership Entities has resulted from the deceptive

acts or practices or other violations of law alleged in the Complaint in this matter, without

prior Court approval;

E.      Obtain, conserve, hold, manage, and prevent the loss of all Documents of the Receivership Entities, and perform all acts necessary or advisable to preserve such Documents.  The Receiver shall:  divert mail; preserve all Documents of the Receivership Entities that are accessible via electronic means (such as online access to financial accounts and access to electronic Documents held onsite or by Electronic Data Hosts, by changing usernames, passwords or other log-in credentials); take possession of all electronic Documents of the Receivership Entities stored onsite or remotely; take whatever steps necessary to preserve all such Documents; and obtain the assistance of the FTC's Digital Forensic Unit for the purpose of obtaining electronic Documents stored onsite or remotely.

F.      Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

G.      Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order, and to incur, or authorize the making of, such agreements as may be necessary and advisable in discharging his or her duties as Receiver.  The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Entities prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure assets of the Receivership Entities, such as rental payments for business premises?;

H.    Take all steps necessary to secure and take exclusive custody of each non-residential location from which the Receivership Entities operate their businesses.  Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable:  (1) securing the location by changing the locks and alarm codes and disconnecting any internet access or other means of access to the computers, servers, internal networks, or other records maintained at that location; and (2) requiring any persons present at the location to leave the premises, to provide the Receiver with proof of identification, and/or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises Documents or assets of the Receivership Entities.  Law enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security.  If requested by the Receiver, the United States Marshal will provide appropriate and necessary assistance to the Receiver to implement this Order and is authorized to use any necessary and reasonable force to do so;

I.    Take all steps necessary to prevent the modification, destruction, or erasure of any web page or website registered to and operated, in whole or in part, by any Defendants, including echeckprocessing.net, and to provide access to all such web page or websites to Plaintiffs' representatives, agents, and assistants, as well as Defendants and their representatives;

J.    Enter into and cancel contracts and purchase insurance as advisable or necessary;

19

K.      Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers who have transacted business with the Receivership Entities;

L.      Make an accounting, as soon as practicable, of the assets and financial condition of the receivership and file the accounting with the Court and deliver copies thereof to all parties;

M.      Institute, compromise, adjust, appear in, intervene in, defend, dispose of, or otherwise become party to any legal action in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Entities, or to carry out the Receiver's mandate under this Order, including but not limited to, actions challenging fraudulent or voidable transfers;

N.      Issue subpoenas to obtain Documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the receivership estate, in addition to obtaining other discovery as set forth in this Order;

O.      Open one or more bank accounts at designated depositories for funds of the Receivership Entities.  The Receiver shall deposit all funds of the Receivership Entities in such designated accounts and shall make all payments and disbursements from the receivership estate from such accounts.  The Receiver shall serve copies of monthly account statements on all parties;

P.      Maintain accurate records of all receipts and expenditures incurred as Receiver;

Q.      Allow the Plaintiffs' representatives, agents, and assistants, as well as
Defendants and their representatives, reasonable access to all Documents in the
possession, custody, or control of the Receivership Entities.  The purpose of this access
shall be to inspect and copy any and all books, records, Documents, accounts, and other
property owned by, or in the possession of, the Receivership Entities or their agents.  The
Receiver shall have the discretion to determine the time, manner, and reasonable
conditions of such access;

R.      Cooperate with reasonable requests for information or assistance from any
state or federal civil or criminal law enforcement agency;

S.      Suspend business operations of the Receivership Entities if in the
judgment of the Receiver such operations cannot be continued legally and profitably;

T.      If the Receiver identifies a nonparty entity as a Receivership Entity,
promptly notify the entity as well as the parties, and inform the entity that it can
challenge the Receiver's determination by filing a motion with the Court.  Provided,
however, that the Receiver may delay providing such notice until the Receiver has
established control of the nonparty entity and its assets and records, if the Receiver
determines that notice to the entity or the parties before the Receiver establishes control
over the entity may result in the destruction of records, dissipation of assets, or any other
obstruction of the Receiver's control of the entity; and

U.      If in the Receiver's judgment the business operations cannot be continued
legally and profitably, take all steps necessary to ensure that any of the Receivership
Entities' web pages or websites relating to the activities alleged in the Complaint,
including **echeckprocessing.net**, cannot be accessed by the public, or are modified for

consumer education and/or informational purposes, and take all steps necessary to ensure that any telephone numbers associated with the Receivership Entities cannot be accessed by the public, or are answered solely to provide consumer education or information regarding the status of operations.

## XIV.   TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER

**IT IS FURTHER ORDERED** that Defendants and any other Person, with possession, custody or control of property of, or records relating to, the Receivership Entities shall, upon notice of this Order by personal service or otherwise, fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the assets and Documents of the Receivership Entities and immediately transfer or deliver to the Receiver possession, custody, and control of, the following:

A.    All assets held by or for the benefit of the Receivership Entities;

B.    All Documents or assets associated with credits, debits, or charges made on behalf of any Receivership Entity, wherever situated, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities;

C.    All Documents of or pertaining to the Receivership Entities;

D.    All computers, electronic devices, mobile devices and machines used to conduct the business of the Receivership Entities;

E.    All assets and Documents belonging to other Persons whose interests are under the direction, possession, custody, or control of the Receivership Entities; and

F.      All keys, codes, user names and passwords necessary to gain or to secure access to any assets or Documents of or pertaining to the Receivership Entities, including access to their business premises, means of communication, accounts, computer systems (onsite and remote), Electronic Data Hosts, or other property.

In the event that any Person or entity fails to deliver or transfer any asset or Document, or otherwise fails to comply with any provision of this Section, the Receiver may file an Affidavit of Non-Compliance regarding the failure and a motion seeking compliance or a contempt citation.

## XV.    PROVISION OF INFORMATION TO RECEIVER

**IT IS FURTHER ORDERED** that Defendants shall immediately provide to the Receiver:

A.      A list of all assets and accounts of the Receivership Entities that are held in any name other than the name of a Receivership Entity, or by any Person other than a Receivership Entity;

B.      A list of all agents, employees, officers, attorneys, servants and those Persons in active concert and participation with the Receivership Entities, or who have been associated or done business with the Receivership Entities; and

C.      A description of any Documents covered by attorney-client privilege or attorney work product, including files where such Documents are likely to be located, authors or recipients of such Documents, and search terms likely to identify such electronic Documents.

## XVI.   COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants; Receivership Entities;

Defendants' or Receivership Entities' officers, agents, employees, and attorneys, all other

Persons in active concert or participation with any of them, and any other Person with

possession, custody, or control of property of or records relating to the Receivership

entities who receive actual notice of this Order shall fully cooperate with and assist the

Receiver.  This cooperation and assistance shall include, but is not limited to, providing

information to the Receiver that the Receiver deems necessary to exercise the authority

and discharge the responsibilities of the Receiver under this Order; providing any keys,

codes, user names and passwords required to access any computers, electronic devices,

mobile devices, and machines (onsite or remotely) and any cloud account (including

specific method to access account) or electronic file in any medium; advising all Persons

who owe money to any Receivership Entity that all debts should be paid directly to the

Receiver; and transferring funds at the Receiver's direction and producing records related

to the assets and sales of the Receivership Entities.

## XVII.   NON-INTERFERENCE WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants; Receivership Entities;

Defendants' or Receivership Entities' officers, agents, employees, attorneys, and all other

Persons in active concert or participation with any of them, who receive actual notice of

this Order, and any other Person served with a copy of this Order, are hereby restrained

and enjoined from directly or indirectly:

A.      Interfering with the Receiver's efforts to manage, or take custody, control,

or possession of, the assets or Documents subject to the receivership;

B.      Transacting any of the business of the Receivership Entities;

C.      Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Entities; or

D.      Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## XVIII. STAY OF ACTIONS

**IT IS FURTHER ORDERED** that, except by leave of this Court, during the pendency of the receivership ordered herein, Defendants, Defendants' officers, agents, employees, attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, and their corporations, subsidiaries, divisions, or affiliates, and all investors, creditors, stockholders, lessors, customers and other Persons seeking to establish or enforce any claim, right, or interest against or on behalf of Defendants, and all others acting for or on behalf of such Persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the assets or Documents of the Receivership Entities, including, but not limited to:

A.      Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, or of any similar insolvency proceeding on behalf of the Receivership Entities;

B.      Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Receivership Entities, including the issuance or

employment of process against the Receivership Entities, except that such actions may be commenced if necessary to toll any applicable statute of limitations;

     C.     Filing or enforcing any lien on any asset of the Receivership Entities, taking or attempting to take possession, custody, or control of any asset of the Receivership Entities; or attempting to foreclose, forfeit, alter, or terminate any interest in any asset of the Receivership Entities, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise.

     Provided, however, that this Order does not stay:  (1) the commencement or continuation of a criminal action or proceeding; (2) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (3) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

## XIX.   COMPENSATION OF RECEIVER

     **IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, in the possession or control of, or which may be received by, the Receivership Entities.  The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order.  The Receiver shall not

1  increase the hourly rates used as the bases for such fee applications without prior

2  approval of the Court.

### XX.    RECEIVER'S BOND

3

4  **IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this

5  Court a bond in the sum of $ _10,000.00_ with sureties to be approved by the Court,

6  conditioned that the Receiver will well and truly perform the duties of the office and

7

8  abide by and perform all acts the Court directs.  28 U.S.C. § 754.

### XXI.   ACCESS TO BUSINESS RECORDS

9

10  **IT IS FURTHER ORDERED** that Defendants allow the Receiver and the

11  Receiver's employees and agents immediate access to Corporate Defendants' business

12  premises, including to Corporate Defendants' listed address at 12282 Eagle Heart Dr., El

13  Paso, TX, for the purpose of serving the Order on Defendants and to take immediate

14

15  possession of and inventory of all Documents that are business records of the Corporate

16  Defendants.

17         A.    The Receiver and the Receiver's employees and agents are authorized to

18  employ the assistance of law enforcement officers, as they deem necessary to effect

19  service of this Order and to ensure their safety when taking possession of and

20

21  inventorying Documents at the Corporate Defendants' business premises, including at

22  12282 Eagle Heart Dr., El Paso, TX.  The United States Marshals Service is directed to

23  assist the Receiver and the Receiver's employees and agents in carrying out the

24  provisions of this Section.

25

26         B.    The Receiver shall take immediate possession of any electronic

27  information storage device, personal or laptop computer, server, or tablet that holds

28

27

information of the Corporate Defendants.  If Defendants maintain electronic business records with any Electronic Data Host, Defendants will immediately provide the Receiver with information sufficient to access and secure such electronic business records. Furthermore, the Receiver is allowed to request that FTC employees and agents to access, secure, copy, and download such business records on behalf of the Receiver.

C. Immediately upon receiving notice of this Order, Defendants must provide the Receiver with the address of all business premises, mail drops, or other addresses used by the Corporate Defendants, including any addresses where employees of the Corporate Defendants work from.  Furthermore, Defendants and all employees of the Corporate Defendants upon receiving notice of this Order shall provide the Receiver and the Receiver's employees and agents with immediate and unencumbered access to all business records at those locations for the purpose of taking possession of and inventorying the Corporate Defendants' business records, including all Documents that may be related to this action, including all records of the Corporate Defendants and all records of any payments or assets received by the Individual Defendants derived from the Corporate Defendants.

D. After the Receiver has taken possession of, secured and taken inventory of Corporate Defendants business records, the Receiver shall allow Plaintiffs employees and agents to inspect and copy these records.  If necessary, the Receiver may allow Plaintiffs to take possession of some Documents for copying.  Plaintiffs shall return such documents within three (3) business days of completing said copying.  Production of Documents to the Plaintiffs by the Receiver pursuant to this Order shall not provide grounds for any Defendant to object to any subsequent request for Documents served by

Plaintiffs.

## XXII.  DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each affiliate, telemarketer, marketer, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, attorney, spouse, subsidiary, division, and representative of any Defendant, and shall, within ten (10) days from the date of entry of this Order, and provide Plaintiffs and the Receiver with a sworn statement that this provision of the Order has been satisfied, which statement shall include the names, physical addresses, phone number, and email addresses of each such Person who received a copy of the Order.  Furthermore, Defendants shall not take any action that would encourage officers, agents, members, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns or other Persons in active concert or participation with them to disregard this Order or believe that they are not bound by its provisions.

## XXIII. EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that, notwithstanding the provisions of the Fed. R. Civ. P. 26(d) and (f) and 30(a)(2)(A)(iii), and pursuant to Fed. R. Civ. P. 30(a), 34, and 45, Plaintiffs and the Receiver are granted leave, at any time after service of this Order, to conduct limited expedited discovery for the purpose of discovering:  (1) the nature, location, status, and extent of Defendants' assets; (2) the nature, location, and extent of Defendants' business transactions and operations; (3) Documents reflecting Defendants' business transactions and operations; or (4) compliance with this Order.  The limited expedited discovery set forth in this Section shall proceed as follows:

A.      Plaintiffs and the Receiver may take the deposition of parties and non-parties.  Forty-eight (48) hours' notice shall be sufficient notice for such depositions.  The limitations and conditions set forth in Rules 30(a)(2)(B) and 31(a)(2)(B) of the Federal Rules of Civil Procedure regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this Section.  Any such deposition taken pursuant to this Section shall not be counted towards the deposition limit set forth in Rules 30(a)(2)(A) and 31(a)(2)(A) and depositions may be taken by telephone or other remote electronic means;

B.      Plaintiffs and the Receiver may serve upon parties requests for production of Documents or inspection that require production or inspection within five (5) days of service, provided, however, that three (3) days of notice shall be deemed sufficient for the production of any such Documents that are maintained or stored only in an electronic format.

C.      Plaintiffs and the Receiver may serve upon parties interrogatories that require response within five (5) days after Plaintiffs serves such interrogatories;

D.      The Plaintiffs and the Receiver may serve subpoenas upon non-parties that direct production or inspection within five (5) days of service.

E.      Service of discovery upon a party to this action, taken pursuant to this Section, shall be sufficient if made by facsimile, email, or by overnight delivery.

F.      Any expedited discovery taken pursuant to this Section is in addition to, and is not subject to, the limits on discovery set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court.  The expedited discovery permitted by this

Section does not require a meeting or conference of the parties, pursuant to Rules 26(d) & (f) of the Federal Rules of Civil Procedure.

    G.    The Parties are exempted from making initial disclosures under Fed. R. Civ. P. 26(a)(1) until further order of this Court.

## XXIV.   SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order as well as the Motion for Temporary Restraining Order and all other pleadings, Documents, and exhibits filed contemporaneously with that Motion (other than the complaint and summons), may be served by any means, including facsimile transmission, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiffs, by any law enforcement agency, or by private process server, upon any Defendant or any Person (including any financial institution) that may have possession, custody or control of any asset or Document of any Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure.  For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity.

## XXV.   CORRESPONDENCE AND SERVICE ON PLAINTIFFS

**IT IS FURTHER ORDERED** that, for the purpose of this Order, all correspondence and service of pleadings on Plaintiffs shall be addressed to:

    Christopher E. Brown
    J. Ronald Brooke, Jr.
    Federal Trade Commission
    600 Pennsylvania Avenue, NW (CC-8528)
    Washington, DC 20580
    Fax:  202-326-3395
    Email: cbrown3@ftc.gov; jbrooke@ftc.gov

1         Jeffrey Loeser (Ohio Bar #82144)
                 Erin Leahy (Ohio Bar #69509)

2         Assistant Attorneys General
                 Consumer Protection Section

3         30 E. Broad Street, 14th Floor
                 Columbus, Ohio 43215

4         Email: jeff.loeser@OhioAttorneyGeneral.gov;

5  erin.leahy@OhioAttorneyGeneral.gov

6

7 ### XXVI. PRELIMINARY INJUNCTION HEARING

8     **IT IS FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 65(b), Defendants

9 shall appear before this Court on the 30TH day of July _____, 2019, at

10 1:00 p.m, to show cause, if there is any, why this Court should not enter a

11 preliminary injunction, pending final ruling on the Complaint against Defendants,

12

13 enjoining the violations of the law alleged in the Complaint, continuing the freeze of their

14 assets, continuing the receivership, and imposing such additional relief as may be

15 appropriate.

16 ### XXVII. BRIEFS AND AFFIDAVITS CONCERNING
### PRELIMINARY INJUNCTION

17

18     A.    Defendants shall file with the Court and serve on Plaintiffs' counsel any

19 answering pleadings, affidavits, motions, expert reports or declarations, or legal

20 memoranda no later than four (4) days prior to the order to show cause hearing scheduled

21 pursuant to this Order.  Plaintiffs may file responsive or supplemental pleadings,

22 materials, affidavits, or memoranda with the Court and serve the same on counsel for

23

24 Defendants no later than one (1) day prior to the order to show Cause hearing.  Provided

25 that such affidavits, pleadings, motions, expert reports, declarations, legal memoranda or

26 oppositions must be served by personal or overnight delivery, facsimile or email, and be

27

28

received by the other party or parties no later than 5:00 p.m. PST on the appropriate dates set forth in this Section.

B.   An evidentiary hearing on Plaintiffs' request for a preliminary injunction is not necessary unless Defendants demonstrate that they have, and intend to introduce, evidence that raises a genuine and material factual issue.  The question of whether this Court should enter a preliminary injunction shall be resolved on the pleadings, declarations, exhibits, and memoranda filed by, and oral argument of, the parties.

C.   Live testimony shall be heard only on further order of this Court.  Any motion to permit such testimony shall be filed with the Court and served on counsel for the other parties at least five (5) days prior to the preliminary injunction hearing in this matter.  Such motion shall set forth the name, address, and telephone number of each proposed witness, a detailed summary or affidavit revealing the substance of each proposed witness's expected testimony, and an explanation of why the taking of live testimony would be helpful to this Court.  Any papers opposing a timely motion to present live testimony or to present live testimony in response to another party's timely motion to present live testimony shall be filed with this Court and served on the other parties at least three (3) days prior to the order to show cause hearing.

Provided, however, that service shall be performed by personal or overnight delivery, facsimile or email, and Documents shall be delivered so that they shall be received by the other parties no later than 5:00 p.m. MDT on the appropriate dates provided in this Section.

## XXVIII.  DURATION OF THE ORDER

**IT IS FURTHER ORDERED** that this Order shall expire fourteen (14) days

from the date of entry noted below, unless within such time, the Order is extended for an

additional period pursuant to Fed. R. Civ. P. 65(b)(2).

## XXIX.  RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this

matter for all purposes.


**SO ORDERED**, this _____19th_____ day of _____July_____, 2019, at

1:55 p .m.


UNITED STATES DISTRICT JUDGE